IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHUCK PETTI** | ) | CASE NO. 1:18-cv-00615-WHB |
| Plaintiff | ) ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| v. | ) ) | |
| **CAMERON DALEY FRAKER** | ) ) | |
| Defendant | ) ) | |
| **PAUL SPIVAK** | ) ) | CASE NO. 1:19-cv-00087-WHB |
| Plaintiff | ) ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| v. | ) ) | |
| **CAMERON DALEY FRAKER** | ) ) | |
| Defendant | ) ) ) | |

## INTERVENING PLAINTIFF USLG'S FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF

(Jury Demand Endorsed Hereon)

Intervening Plaintiff US Lighting Group, Inc. ("**USLG**"), for its First Amended Complaint against Defendant Cameron D. Fraker a.k.a. Daley Fraker ("**Defendant**"), states as follows:

1. USLG is a for-profit Florida corporation, engaged in the manufacture and sale of commercial LED lighting, with a principal place of business at the above captioned address in Lake County, Ohio.

2. Defendant is an individual resident of the state of Missouri, residing at the above captioned address.

3. The claims stated herein arise out of and involve contracts negotiated and executed in the state of Ohio and expressly governed by the laws of the states of Ohio and Wyoming.

4. The amount in controversy is in excess of $75,000.00.

5. Jurisdiction is proper under 28 U.S.C. § 1332.

6. Venue is proper under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

7. In 2015, the parties entered contractual negotiations which culminated in Defendant obtaining the exclusive rights to distribute USLG products in a defined geographic area.

8. On or about September 21, 2015, USLG and Defendant entered into a Confidentiality Agreement, attached hereto as Exhibit 1.

9. On or about October 14, 2015, USLG and Defendant entered into an Exclusive Distributor Agreement ("the First Distributor Agreement"), attached hereto as Exhibit 2.

10. On or about May 3, 2016, USLG and Defendant entered into a new agreement ("The Second Distributor Agreement"), attached hereto as Exhibit 3. (The First Distributor Agreement and the Second Distributor Agreement are collectively referred to hereafter as "the Distributor Agreements").

11. The Distributor Agreements explicitly incorporate and reference the Confidentiality Agreement, which, by its terms, "shall be construed under the laws of the State of Ohio" and strictly prohibits Defendant from disclosing any Confidential Information obtained in the parties' course of dealings absent the express written consent of USLG.

12. Subsequent to execution of the Confidentiality Agreements, Defendant was

provided Confidential Information from USLG, including: customer names and lists; distributor names and information; sales information, methods, and tactics; prices; contracts and agreements; product design information; upcoming products; and other material or information contemplated and protected by the Confidentiality Agreement.

13. In violation of obligations imposed by the Confidentiality Agreement, Defendant openly discussed with others the dealings he had with USLG and disclosed other Confidential Information regarding product offerings and product designs without USLG's consent or approval.

14. Upon information and belief, Defendant also shared Confidential Information with competing lightbulb manufacturers and distributors who he began working for and with immediately prior to and/or upon terminating his relationship with USLG.

15. The Distributor Agreements prohibited Defendant from selling lightbulbs and other products that are competitive with USLG's products.

16. In breach of the Distributor Agreements, Defendant sold lightbulbs and other products that are competitive with USLG's products.

17. The Distributor Agreements further obligate Defendant to conduct business with USLG in a professional, fair, ethical, and legal manner.

18. Defendant breached the Distributor Agreements by sending threatening, extortionate, and otherwise abusive communications and engaging in online activities designed to adversely affect Internet search results relevant to USLG's business interests.

19. More specifically, in an attempt to gain undue leverage in a dispute which arose during the course of dealings between the parties, Defendant published a "report" on the website RipoffReport.com ("Ripoff Report") about USLG (and others) at the following URL:

https://www.ripoffreport.com/reports/us-lighting-group-uslg-intellitronix-corp-paul-spivak/eastlake-ohio/us-lighting-group-uslg-intellitronix-corp-paul-spivak-paul-spivakchuck-pettiolga-sm-1424065 ("the Report"). A copy of the Report is attached as Exhibit 4.

20. Ripoff Report is a largely unmoderated and rather notorious Internet website, operated by Xcentric Ventures, L.L.C., which is specifically designed to allow Internet users to publish, anonymously or pseudonymously if so desired, unverified accusations of misconduct and other allegations for the purpose of exposing the subjects of the Reports to various forms of opprobrium and disgrace in their community and profession.

21. Ripoff Report's general policies provide that it does not review posts published by its users on its website. Ripoff Report's Terms of Service (TOS) disclaims all responsibility to review any post or remove, redact, or update false information that is published.

22. As a required step in Ripoff Report's user sign-up process, before publishing a post, a user must specifically check a box requiring them to "acknowledge that once I submit my Post, the Post cannot be edited by me, nor will it be removed, even at my requests."

23. Users are also required to check a box stating that they have read and agreed to Ripoff Report's TOS.

24. Through the TOS, Ripoff Report obligates all of its users to assign to the website's owners an exclusive and irrevocable license to display any and all content published on its platform.

25. Ripoff Report will not itself edit or to any degree redact a report posted on its platform unless the subject of the report agrees to enter its "Corporate Advocacy Program" (CAP) which requires a regular and indefinite payment of money to Ripoff Report's owners.

26. The Report uploaded by Defendant accuses USLG of having a "Bogus Warranty,"

4

"Theft of Downpayments," refusing to ship new product orders and replacements, and recalling goods.

27. The Report publicizes and broadcasts several intentional misrepresentations relative to the parties' business dealings and alleges that USLG has done the same things listed in the Report to all of its distributors.

28. The allegations and claims in the Report are materially false, defamatory, and not protected by privilege or opinion. The Report is negative and defamatory *per se* towards USLG because it impugns its reputation, injuriously affects its business, and accuses USLG of committing the crime of theft.

29. The Defendant authored and published the Report in the course and scope of his business.

30. On January 22, 2018, Defendant published a second post on the Report titled "Correction for Clarity." The substance of the Correction for Clarity is identical to the original post on his Report, except that it adds two pieces of information to the allegations of his original post. The Correction for Clarity appears as an amendment on the Report.

31. The Report has been viewed online over 1,000 times, including by customers, investors, and distributors of USLG.

32. Defendant uploaded the Report in bad faith and in violation of his duty of good faith and fair dealings.

33. The Distributor Agreements provide that Defendant must purchase a minimum of 1000 products from USLG annually per million of population of his exclusive sales territory.

34. The total population of Defendant's assigned sales territory is fourteen million people, thereby obligating Defendant to purchase a minimum total of 14,000 products from USLG

annually.

35. According to the price list included as Addendum A to the First Distributor Agreement, the products listed, if purchased in amounts of over 5,000+ bulbs, will be sold to Defendant at a price of either $19.95 per bulb or $24.95 per unit.

36. Defendant was therefore required to purchase a minimum of between $279,300.00 and $349,300.00 worth of USLG product annually.

37. Defendant purchased only $50,000.00 worth of products from USLG over a two-year period.

38. Defendant breached the Distributor Agreements by failing to order and pay for minimum purchases of lightbulbs in agreed upon amounts. This has caused USLG to suffer revenue losses in amounts of at least $508,600 to $648,600.

39. As a result of Defendant's actions described above, other distributors of USLG ceased buying lightbulbs from USLG and potential distributors did not seek to become USLG distributors or purchase USLG products, causing a $250,000 drop in sales revenue.

40. Also as a result of Defendant's actions complained of herein, USLG lost at least $2,500,000 dollars of financial investment because current and potential investors of USLG who were going to invest money in USLG did not do so and/or refused to buy USLG stock.

41. Furthermore, due to Ripoff Report's search engine optimization tactics, USLG's advertising became significantly less effective. Compared to the year prior, USLG tripled its advertising expenses (approximately $1.3 million) in an effort to mitigate its damages yet obtained significantly less of a return because qualified investors would find the Report in Internet search results when doing due diligence research on USLG.

42. Finally, as a result of Defendant's actions complained of herein, USLG incurred

unnecessary product design fees and research expenses of approximately $250,000.

## COUNT I: BREACH OF CONTRACT

43. USLG incorporates by reference all allegations set forth above as if fully restated herein.

44. USLG and Defendant entered into the Confidentiality Agreement and the Distributor Agreements (collectively "the Agreements").

45. USLG fully performed its obligations under the Agreements.

46. Without legal excuse, Defendant materially breached the Agreements and did so in bad faith.

47. Defendant breached his implied duty of good faith and fair dealing through his actions complained of herein.

48. Throughout the course of dealings, Defendant failed to remain faithful to an agreed common purpose and consistent with the justified expectations of USLG.

49. Instead of complying with the warranty provided by USLG, Defendant acted in bad faith attempting to coerce USLG to provide a refund he was not due.

50. Instead of complying with the terms of the Confidentiality Agreement, Defendant intentionally breached and had threatened to breach confidentiality in order to gain leverage and coerce USLG to provide a refund he was not due.

51. As a direct, proximate, and foreseeable result of Defendants' actions described herein, USLG has suffered the damages detailed above.

52. As additional relief, and to prevent irreparable harm, USLG requests a permanent injunction prohibiting Defendant from further sharing, disseminating, or otherwise disclosing Confidential Information he obtained from USLG.

## COUNT II: TORTIOUS INTERFERENCE WITH CURRENT & PROSPECTIVE BUSINESS RELATIONS, ADVANTAGE, & CONTRACT

53. USLG incorporates by reference all allegations set forth above as if fully restated herein.

54. USLG had contracts and/or business relations with distributors, investors, and other parties of which Defendant, upon information and belief, was aware.

55. USLG also had contracts with distributors, investors, and other third parties that were prospectively looking to enter into contractual or other business relations with USLG.

56. Upon information and belief, Defendant, directly and indirectly, contacted and made misrepresentations to these distributors, investors, and other parties who had current and prospective business and/or contractual relationships with USLG intentionally, improperly, without privilege or justification, and in breach of the Confidentiality Agreement, and for the specific purpose to prevent contract formation, procure a contractual breach, and/or cause a termination of business relations with USLG and these parties.

57. As an intended and foreseeable result, Defendant's actions complained of herein caused contractual breaches, termination of other business relationships, and prevented contractual formation between USLG and others.

58. As a result of Defendant's actions, USLG suffered damages as detailed above.

## COUNT III: MISAPPROPRIATION OF TRADE SECRETS

59. USLG incorporates by reference all allegations set forth above as if fully restated herein.

60. USLG has trade secrets that include distributor and investor information, potential customer lists and names, financial information, marketing information, and other Confidential Information described and in the parties Confidentiality Agreement.

61. Defendant acquired the trade secrets and Confidential Information as a result of a confidential relationship with USLG.

62. Upon information and belief, Defendant has used USLG's trade secrets and Confidential Information for his benefit as a competitor of USLG without authorization.

**COUNTS IV, V, VI:  LIBEL, DECEPTIVE TRADE PRACTICES ORC 4165.02(A)(10), & INJURIOUS FALSEHOOD**

63. USLG incorporates by reference all allegations set forth above as if fully restated herein.

64. Defendant published the Report about USLG which is false in its entirety and contains false statements of and concerning USLG.

65. The Defendant authored and published the Report in the Court and scope of his business as a distributor of USLG. The Report constitutes a violation of Ohio Revised Code 4165.02(A)(10).

66. The Defendants authored and published the Report without privilege or authorization. USLG is informed and believes, and, upon that basis, alleges that the Report was written and published with malice or knowledge of its falsity or at least with negligence and/or intentional or recklessly, with unreasonable beliefs, and without any information or documents that can substantiate or verify Defendant's allegations and claims in the Report.

67. USLG is further informed and believes, and upon that basis, asserts that such Report has been viewed, read, and was specifically directed and communicated to people in Northeast, Ohio for the purpose of damaging USLG's reputation in its community.

68. As a direct and proximate result of the Report, USLG has suffered significant reputational harm and sustained actual and other pecuniary loses, special damages, and other damages including, but not limited to, loss of capital and revenue, lost productivity, loss of

opportunity, losses to property, losses resulting from attorneys fees needed to bring claims to stop the continued publication of the false statements, and loss of intangible assets.

69. USLG requests a permanent injunction halting the continued dissemination of the false statements described above, and further ordering Defendants to remove the statements from the Internet and requests Google, Bing, Yahoo! and other search engine providers to remove the website listed from their respective search results. Without a permanent injunction judgment of this Court, Defendants false statements will continue to cause great and irreparable injury to USLG.

70. As a result of Defendant's actions, USLG has suffered damages as detailed above.

WHEREFORE, USLG demands judgment against Defendant as follows:

   a. Compensatory damages in excess of $75,000.00;
   b. Punitive damages;
   c. Pre- and post-judgment interest;
   d. Attorneys fees and costs;
   e. Injunctive relief to specifically enforce the Confidentiality Agreement;
   f. Injunctive relief to stop continued publication and re-publication of the libel;
   g. Any and all other relief, both in law and in equity, this Court is empowered to grant.

Respectfully submitted,

*/s/ Aaron M. Minc*
Aaron M. Minc (0086718)
Minc LLC
200 Park Ave,
Suite 200
Orange Village, Ohio 44122
Phone: (216) 373-7706
Fax: (440) 792-5327

Email: aminc@MincLaw.com

## JURY DEMAND

Plaintiff US Lighting Group, Inc. hereby demands a trial by jury on all issues not determinable as a matter of law.

*/s/ Aaron M. Minc*
Aaron M. Minc (0086718)

*Counsel for Intervening Plaintiff*

## INSTRUCTIONS FOR SERVICE

Plaintiff request that the Clerk of Courts serve a copy of this First Amended Complaint on Defendant, via Certified U.S. Mail, at the above captioned address.

*/s/ Aaron M. Minc*
Aaron M. Minc (0086718)

*Counsel for Intervening Plaintiff*